## FARRA *v.* BRAMAN.

[No. 21,386. Filed January 8, 1909.]

1. PLEADING.—*Complaint.—Conclusions.*—In determining the sufficiency of a complaint conclusions therein cannot be considered. p. 535.

2. SAME.—*Complaint.—Conclusions.—Instances.*—Allegations that "in accord with the rules and regulations of said association" assured requested a change of beneficiaries, that assured "did and performed all things that he could * * * to have tⲏe plaintiff substituted in lieu of the beneficiary first named in said application," that an "absolute divorce was granted to him, thereby depriving [the divorced wife] of any right to participate in said fund as beneficiary or otherwise," and that said divorced wife ceased to be and has never since been the legal beneficiary of the deceased, are legal conclusions and wholly immaterial. p. 535. ·

3. INSURANCE. — *Mutual.—Contracts. — Elements.* — The by-laws, rules and regulations of a mutual insurance company enter into and form a part of the contract of insurance. p. 538.

4. SAME.—*Mutual.—Beneficiaries.—Change of.—Contracts.*—Where an insurance application designated a certain method of changing beneficiaries, the assured is required to pursue such method in order to make such change. pp. 538, 541, 542.

5. SAME.—*Change of Beneficiaries.—Fraud.*—Where a named beneficiary, through fraud, prevents an attempted substitution of beneficiaries, equity may perfect the attempted substitution. p. 541.

6. SAME.—*Mutual Benefit.—Vested Rights.*—The beneficiary in a mutual benefit certificate has no vested right therein until the assured's death, prior to which assured may substitute another. p. 542.

7. SAME.— *Mutual Benefit.— Beneficiaries.— Wife.— Divorce.— Effect.*—Where the rules of a mutual benefit society prescribe that the assured may designate his beneficiary, a decree of divorce in his favor does not, of itself, deprive the wife of her rights as his beneficiary. *Tyler* v. *Odd Fellows Mut. Relief Assn.*, 145 Mass. 134, distinguished. p. 543.

8. SAME.— *Beneficiary.— Insurable Interest.— Divorce.—* A beneficiary whose appointment was valid when made does not ordinarily become disqualified by reason of loss of insurable interest or of change of relationship to the assured. p. 546.

From Superior Court of Allen County; *John M. Morris,* Judge *pro tem.*

Action by Ada A. Farra against Eva J. Braman and another. From a judgment against plaintiff, she appeals. Transferred from Appellate Court under §1394 Burns 1908, cl. 2, Acts 1901, p. 565, §10. *Affirmed.*

*W. & E. Leonard,* for appellant.

*Heaton & Yaple* and *Vesey & Vesey,* for appellee.

JORDAN, C. J.—The record in this case discloses, among other things, that appellant and appellee each claimed the right to receive $500 as a death benefit from the Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh, on account of insurance on the life of John F. Ried, deceased. Appellant was the surviving widow of the latter, but since his death she has intermarried with Frank Farra. Appellee was the divorced wife of said Ried, but since her divorce she has married one Braman. The Pennsylvania Company declined to pay either of said claimants, and thereupon appellant filed a complaint in the Superior Court of Allen County, making that company and appellee parties defendant. It is shown that the company appeared in court and filed an answer, admitting that it owed $500 to whoever was authorized to accept it, and requested to be permitted to pay the money into court and be discharged from further liability. This it was permitted to do, and the controversy in regard to the right to receive the money proceeded between appellant and appellee.

The original complaint upon which appellant based her right of action consisted of two paragraphs, the first of which was dismissed. Subsequently she filed a third paragraph. Appellee, a nonresident of the state, having been notified by publication of the pendency of the action, appeared in court by counsel and filed an answer of general denial to appellant's complaint, and also filed a cross-complaint, demanding affirmative relief. She subsequently with-

drew her answer and demurred for insufficiency of facts to
the second and third paragraphs of appellant's complaint.
The court sustained this demurrer to each of these para-
graphs, to which ruling appellant excepted. Appellant also
demurred for insufficiency of facts to the cross-complaint of
appellee. This demurrer was overruled, to which she also
excepted. She then elected to stand upon the second and
third paragraphs of her complaint and abide by the ruling
of the court on the demurrers thereto, and upon her refusal
further to plead the court rendered its judgment in favor
of appellee, awarding her the insurance money paid into
court by the Pennsylvania Company, and ordered the clerk
to pay this money over to appellee. From this judgment,
appellant prosecutes this appeal.

Errors are assigned upon the ruling of the court on the
demurrer to the second and third paragraphs of complaint
and upon the overruling of appellant's demurrer to appel-
lee's cross-complaint.

By the second paragraph of the complaint it is
alleged that the Pennsylvania Company, in opera-
ting various lines of railroad throughout the United
States, has, in connection with its said business, what is
known as a Voluntary Relief Department of the Pennsyl-
vania Lines West of Pittsburgh. This department is con-
ducted upon the line of a mutual benefit society, and ex-
tends over and embraces a large number of railroads, one
of which is known as the Pittsburgh, Ft. Wayne & Chicago
railroad, which road runs from Pittsburg, through the city
of Ft. Wayne, Indiana, to the city of Chicago, Illinois. The
object of said relief department is the establishment and
management of a fund, known as the ''relief fund,'' for
the payment of definite amounts to employes who contribute
thereto, and who, under its regulations, are entitled thereto
when they are disabled by accident or sickness, and in the
event of their death, payable to the relatives or those de-
pendent upon the insured, or the beneficiaries specified in

the application of the member. Such funds from which the benefits are to be paid are accumulated by the voluntary contributions of employes who are members, etc. The Pennsylvania Company has general charge of the fund, guarantees the performance of the obligations assumed by it in conformity with the rules and regulations from time to time made. Members admitted are known as members of the relief fund. Membership is effected by an application, filed with said company, on forms and blanks furnished by the company, to be approved by the superintendent of said department. In the application so made for membership the applicant may designate the name of the beneficiary to whom such fund shall be paid on the death of the insured. Said fund and the members thereof are divided into five classes, according to the amount of wages received by each member per month. Those of the first class are insured to the amount of $250, those of the second class to the amount of $500, in the third class to the amount of $750, in the fourth class $1,000, and the fifth class $1,250. Upon the approval of an application made for membership, a certificate is issued to such applicant, which certificate indicates the class to which he belongs. In pursuance of the rules and regulations of said defendant company, which rules and regulations are attached to and made a part of the pleading, and marked exhibit C, John F. Ried applied to the company for membership in the second class, and duly filed his application for admission in said association, which application is made a part of the pleading and marked exhibit B. This application was duly approved by the superintendent, and on June 1, 1899, a certificate in said association, duly numbered, etc., was executed and issued to said John F. Ried as evidencing the fact that he was a member in good standing of the second class of said association, which certificate, together with the book of rules attached thereto, is made a part of the pleading and marked exhibit A. At the time Ried applied for member-

ship in said association he was the husband of the appellee
herein, and in said application he named her as his bene-
ficiary, to receive at his death the sum of $500. Said Ried
so named Eva J. Ried as beneficiary in said certificate on
account of the fact that she was his wife and therefore
dependent upon him. The object of said voluntary relief
department is the establishment of a fund for the payment
of definite amounts to employes contributing thereto, and
from this fund, in the event of the death of the insured, a
certain amount is to be paid to relatives or other depend-
ents upon the insured. On October 17, 1899, as averred, said
John F. Ried procured a divorce from his wife, Eva J. Ried.
By said divorce said Eva J. Ried was deprived of any right
to participate in said fund as beneficiary or otherwise, for
the reason that she no longer sustained the relation to said
insured as was required by the rules and regulations of said
association, and on account of which said Eva J. Ried ceased
to be, and never since has been, the legal beneficiary of said
John F. Ried. Thereafter, on October 17, 1901, said John
F. Ried intermarried with the appellant herein. Subse-
quently to the marriage of said Ried to the appellant, he, in
accord with the rules and regulations of said association, re-
quested the local agent of said association to change the
name of the beneficiary, Eva J. Ried, named in his applica-
tion, and to substitute therein the name of his then wife,
Ada A. Ried, the appellant herein, and that said Ried at
said time "did and performed all things that he could do
and perform in an effort to have the name of this appellant
substituted in lieu and instead of the beneficiary first named
in this application, but, owing to the neglect and failure
of said agent of said association, the name of Ada A. Ried
was not actually substituted as the beneficiary in place of
the name of Eva J. Ried, but said John F. Ried did all that
was in his power to consummate the same." On October 15,
1902, said John F. Ried, while in the employ of the rail-
road company, was accidentlly killed, his death occurring

before there was an actual substitution of the name of the appellant herein, as his beneficiary in said association, instead of the appellee, Eva J. Ried, which was not caused by and was not the result of any failure on the part of said Ried to do and perform all things necessary for him to do and perform in order that said substitution might actually be made and effected.   There are other averments as to proof of death, etc., alleged in this paragraph, and it is further alleged that Eva J. Ried claims to have and hold some interest in or right to said fund, or a portion thereof, which claim is wholly unfounded, etc.   The prayer is that the court decree the equitable substitution of the beneficiary, and that this appellant be declared the real beneficiary in said contract of insurance instead of appellee, Eva J. Ried, that appellant have judgment against said railroad company in the sum of $500, and that said Eva J. Ried be required to set up any claim or right which she may have to said fund, etc.

In the main the facts set up in the third paragraph of the complaint are substantially the same as in the second, except that there are no averments of any effort upon the part of Ried to substitute appellant for appellee as the beneficiary in the certificate of insurance.   The appellant in this paragraph, apparently relies wholly upon the assignment by Ried of the certificate of insurance to her, who at that time was his wife.   It is therein alleged that on October 17, 1901, immediately after Ried's marriage to the appellant, he assigned to her all of his right, title and interest in and to the certificate of insurance and delivered said certificate to her, together with the book of rules attached thereto, for the purpose of vesting in her the absolute title thereto, and of enabling her, upon his death, to receive the amount mentioned in said certificate.   It is averred that she accepted the certificate, and thereafter paid the assessments thereon to the amount of $35, which she agreed to

pay if Ried would assign to her said certificate. The prayer was for judgment against the railroad company and appellee.

It is argued that the second and third paragraphs of the complaint present two questions for our determination: (1) Is the wife of a member of the relief department in question, whose name is designated as a beneficiary in the application of a member, displaced as such beneficiary and rendered incapable of remaining as such on account of the granting of a divorce to the husband, or, in other words, does such decree of divorce *ipso facto* render her ineligible thereafter as such beneficiary and serve to deprive her of the benefits upon the death of the insured? (2) Under the facts alleged, did John F. Ried, the insured, effect a change of beneficiaries, or vest in appellant the right to have and receive the amount of insurance in question upon his death?

In testing the sufficiency of a pleading on demurrer the court can only regard the facts well pleaded, and not mere conclusions of the pleader. The averments in the complaint that John F. Ried, the insured, "in accord with the rules and regulations of said association," applied to and requested the local agent of said association to change the name of the beneficiary, etc., and that he "did and performed all things that he could do and perform in an effort to have the plaintiff substituted in lieu of the beneficiary first named in said application," and further, as alleged, that an "absolute divorce was granted to him, thereby depriving said Eva J. Ried of any right to participate in said fund as beneficiary or otherwise," and that, on account of the rules and regulations of said association, said Eva J. Ried ceased to be and has never since been the legal beneficiary of the deceased, John F. Ried, and other averments of a similar character, are but conclusions, and lend no support to the pleading. It is well settled that a mere averment of a conclusion in a pleading,

without alleging facts which sustain the conclusion, is not sufficient and of no avail. The agreement of association, the certificate of insurance and application therefor, together with the rules and regulations of the relief department, filed as exhibits and made a part of each paragraph of the complaint, serve to aid us in determining the questions argued by the respective parties. The second subdivision of the agreement of the Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh is as follows:

"Second. That the companies, parties hereto, in order to secure uniformity and economy, do hereby associate themselves for the purpose of a joint administration and regulation of said respective relief departments under one common organization, to be known as 'The Voluntary Relief Department of the Pennsylvania Lines West of Pittsburgh;' and to this end they mutually agree to designate the same person to act as superintendent of the same, and the same persons for any other general officers necessary for conducting the business thereof, such joint superintendent to be subject to the control of the general manager of the Pennsylvania Company."

Subdivision three of the book of rules provides:

"The object of this department is the establishment and management of a fund, to be known as 'The Relief Fund,' for the payment of definite amounts to employes contributing to the fund, who under the regulations shall be entitled thereto, when they are disabled by accident or sickness, and, in the event of their death, to the relatives or *other beneficiaries specified in the application of such employes.*" (Our italics.)

Rule eight, among other things, provides that the superintendent shall have general charge of all the business pertaining to the department, etc. He is authorized to employ, with the approval of the general manager, a chief clerk, medical examiners, and such other employes as may be necessary for the proper conduct of the business of the department.

The form of the application to be made for membership in the relief department is provided for by rule twenty-two,

and contains a blank for the designation of the name of the beneficiary to whom the death benefits shall be payable. Rule twenty-eight contains the following provision:

"An applicant may, in his application or subsequently, designate a beneficiary to receive his death benefit other than relatives entitled to recover the amount payable in event of the death of the applicant, on giving good and sufficient reasons for such designation."

Rule twenty-nine, among other things, provides as follows:

"Benefit payable on account of the death of a member shall be payable only to the beneficiary or beneficiaries designated in his application to receive the same, if living at the death of said member. If the designated beneficiary shall not be living at the death of said member, then the benefit shall be payable to the wife (or husband), or in the event of the applicant at death having no wife (or husband) living, then to the children of the member collectively."

In the application made by John F. Ried for membership in the relief fund, and the one upon which the certificate of his membership was issued, is the following stipulation:

"I also agree that this application, when approved by the superintendent of the relief department, shall make me a member of the relief fund, and constitute a contract between myself and such company."

In said application it was further stipulated and provided by him that death benefits *"shall be payable to my wife, Eva J. Ried, of Ft. Wayne, Indiana, if living at the time of my death and not withdrawn as my beneficiary, or to such other person or persons as I shall subsequently duly designate in writing* in substitution therefor, with the approval of the superintendent of the relief department. Otherwise," etc. (Our italics.)

Eliminating the conclusions from the second paragraph of the complaint, and the only facts therein remaining to show the attempt made by Ried to substitute appellant as beneficiary in place of appellee are those disclosed by the

averments that he "applied to and requested the local agent of the association to change the name of his beneficiary first named in his application, to wit, Eva J. Ried, and to substitute therefor the name of his then wife, Ada A. Ried," but, owing to the neglect and failure of said agent, the substitution was not actually made. There is an entire absence of any facts going to establish that the local agent in question was the proper person to make the change requested, or that he was invested with power or authority to carry into effect the change in the beneficiary as requested by Ried. It will be noted that the latter in his application, after stipulating that the death benefit "shall be payable to my wife, Eva J. Ried, of Ft. Wayne, Indiana," further provided therein "or to such other person or persons as I shall subsequently duly designate in writing in substitution therefor, with the approval of the superintendent of the relief department." It is also disclosed that he expressly agreed in his application that its approval by the superintendent of the relief department "shall make me a member of the relief fund and constitute a contract between myself and such company." Of course it is not to be understood that the application alone constituted the entire

3. contract, for it is well settled that the by-laws, rules and regulations of a mutual benefit association are elements which enter into and form a part of the insurance contract. *Supreme Lodge, etc., v. Knight* (1889), 117 Ind. 489, 3 L. R. A. 409, and authorities cited.

No facts are averred to disclose that Ried, in his desire to displace appellee as the original beneficiary, in any manner complied with the method prescribed in the applica-

4. tion, by applying to the superintendent of the relief department and designating in writing the name of the person he wished to substitute as a beneficiary in place of appellee, and in securing the superintendent's approval of such change. The case of *Mason v. Mason* (1903), 160 Ind. 191, arose over the payment of a death benefit upon

an insurance certificate issued by the same relief department as is herein involved.   In that appeal the same rules, by-laws and regulations governing the change of a beneficiary were fully considered by this court.   That decision, so far as applicable, must be regarded and adhered to as a ruling authority in the case at bar.   George W. Mason, the insured, was an employe of the Pennsylvania Company, and in becoming a member of the relief department in question had designated his mother as his beneficiary.   He subsequently married, and after his marriage he, together with his wife, went to the authorized agent of the association and then and there surrendered to him the original certificate of membership and a book containing copies of the contract and regulations that he had received with his former certificate.   He requested that a new certificate of membership be issued to him, in a different class, ''and then and there designated his wife, Jennie Mason, as his beneficiary in case of his death.''   The agent authorized to do so issued to Mason a certificate of membership in said association, together with a book of rules, etc.   Thereupon he delivered the new certificate and book of rules to his wife.   At the time of the issuing of the new certificate he designated her as his beneficiary, but the new certificate, as issued and delivered to her, did not mention her name or the name of any one as the beneficiary.   Under the facts it was held that there was no new designation or change of a beneficiary in accordance with the contract.   In considering this question, the court, by Gillett, J., said: ''But whatever the character of the association, it is obvious that the relations of the insured and the beneficiary to the insurance contract may be made to depend upon the provisions of the contract. To the extent that the contract gives the beneficiary rights, its provisions are a law unto the parties.   If there is a right reserved by the insured to change the beneficiary, but if the contract points out the manner in which the change is to be made, then it is the duty of the insured to pursue.

the contract, if he would displace the beneficiary." Citing authorities.

In *Holland* v. *Taylor* (1887), 111 Ind. 121, the action arose out of a death benefit certificate issued by the Royal Arcanum, a mutual benefit association. The change of beneficiary was involved in that appeal. The rules of that society provided that a change of beneficiary might be made by the insured by a surrender of the old certificate and the execution of the direction for a change according to the prescribed form. This court held that the insured could not make such change by provision in his will. In referring to the relation of the beneficiary to the contract, the court said:. "It would be saying too much to say that she had no rights. She was the beneficiary named in the certificate. * * * So long as the contract remained as executed, she had the right of a beneficiary, subject to be defeated by change of beneficiary by the assured. So long as the certificate remained as executed, the assured had reserved to himself the power to change the beneficiary, and that was the extent of his right in, or power over, the certificate, or the amount agreed to be paid at his death. He had no interest in or to either the certificate or the amount agreed to be paid, that would have gone at his death to his personal representative. By virtue of the by-laws and the certificate, which, as we have seen, constituted the contract between him and the Royal Arcanum, he had power to change the beneficiary. That same contract fixed the mode and man-. ner in which that change might be made; and we think that, taking the by-laws and certificate together, the mode and manner of changing the beneficiary was fixed as definitely, and was as binding upon the assured, as was the right to make such change binding upon the association and the beneficiary. In other words, under the contract, the assured had a right to change the beneficiary, provided he made the change in the manner provided in the contract."

In cases of the character of the one at bar the method

prescribed in the contract for making a change of the beneficiary is a matter of substance, and as a general rule must be pursued. *National Mut. Aid Soc.* v. *Lupold* (1892), 101 Pa. St. 111; *Gentry* v. *Supreme Lodge, etc.* (1885), 23 Fed. 718; *Highland* v. *Highland* (1884), 109 Ill. 366; *Olmstead* v. *Masonic Mut. Benefit Soc.* (1887), 37 Kan. 93, 14 Pac. 449; *Supreme Conclave, etc.,* v. *Cappella* (1890), 41 Fed. 1; *McLaughlin* v. *McLaughlin* (1894), 104 Cal. 171, 37 Pac. 865, 43 Am. St. 83; *Wendt* v. *Iowa Legion of Honor* (1887), 72 Iowa 682, 34 N. W. 470.

Of course, as asserted in *Mason* v. *Mason, supra,* there are cases arising upon mutual benefit insurance in which the principles of equity may be invoked to aid a defective

5.  exercise of power by the assured in making a change in the beneficiary, or in a case in which an element of fraud upon the part of the beneficiary is involved. Generally speaking, however, such cases, in the absence of any question of fraud or other wrong on the part of the beneficiary preventing the change from being made in accordance with the prescribed mode, are those in which the change has been actually made by the assured, but in so doing the method provided has not been strictly pursued. *Grand Lodge, etc.,* v. *Noll* (1892), 90 Mich. 37, 51 N. W. 268, 30 Am. St. 419, 15 L. R. A. 350; *Isgrigg* v. *Schooley* (1890), 125 Ind. 94; *Supreme Conclave, etc.,* v. *Cappella, supra;* *Jory* v. *Supreme Council, etc.* (1894), 105 Cal. 20, 38 Pac. 524, 26 L. R. A. 733, 45 Am. St. 17.

In the case at bar there is no room for invoking the aid of equity, as there is no element of fraud therein, and there

4.  is no defective exercise by the assured of the power or right to change his original beneficiary. It is not shown that he endeavored to comply with the method prescribed in the contract for displacing the appellee and substituting appellant in her place as beneficiary. Neither does it appear that appellee did anything whatever to prevent him from substituting appellant, by the mode provided,

as the beneficiary to whom the death benefit should be paid.
It is a rule well established that a policy of insurance
6. issued by a mutual benefit society or association is
unlike an ordinary life policy of insurance, as it
creates no vested right in the beneficiary. As the authorities affirm, it is only an expectancy, and the right of the
beneficiary to the proceeds of such policy does not become
vested or absolute until the death of the insured. Nevertheless, the beneficiary has an interest therein, subject, however, to the right of the assured to substitute another by
complying with or by following the method prescribed by
the contract, or by the rules and regulations of such society
or association. *Holland* v. *Taylor, supra; National Mut.
Aid Soc..v. Lupold, supra; Gentry* v. *Supreme Lodge, etc.,
supra; Highland* v. *Highland, supra; Olmstead* v. *Masonic
Mut. Benefit Soc., supra; Supreme Conclave, etc.,* v. *Cappella, supra; McLaughlin* v. *McLaughlin, supra; Wendt* v.
*Iowa Legion of Honor, supra.*

The second paragraph of the complaint manifestly is insufficient in facts to establish that appellee was by the acts
of the assured displaced as the beneficiary of the in-
4. surance and appellant substituted as such in her
place. Equally deficient in this respect is the third
paragraph under the facts therein alleged. In the latter the
complaint relies upon what is claimed to be an equitable assignment to her of the certificate of insurance by reason of
the facts that the insured delivered to her said certificate
and the book of rules attached thereto, and, as a part of the
same transaction, informed her that the insurance money
was her property, etc. It may be said that the third paragraph discloses that the insured wholly ignored the prescribed method for changing his beneficiary, by means of
which, had he pursued it, he might successfully have exercised such right.

The final question presented for consideration is: Did the
divorce secured from appellee by John F. Ried alone oper-

ate to render her thereafter ineligible as the bene-

7. ficiary and deprive her of receiving the death benefits in controversy in this action? · Counsel for appellant contend that the very object of the relief department in question was the establishment of a fund for the payment of definite amounts to employes contributing thereto, and in the event of their death to be paid only to relatives or other dependents; that by reason of the divorce appellee no longer sustained the relation to the insured as is required by the laws of such association; that, inasmuch as the decree terminated all of the relations existing between appellant and her said husband, therefore she was neither his relative, a member of his family, nor in any manner dependent upon him for support. Consequently, it is argued, she ceased to be the lawful beneficiary and must be held to be deprived of receiving payment of the money in question.

It may be conceded that by the divorce in question the relation of husband and wife was terminated, and the wife was no longer a relative or dependent of her former husband, and in the event of his death could not in any sense be regarded as his heir; but it does not follow that from the mere fact of the divorce alone she was thereby disqualified as a beneficiary and deprived of the benefits provided for by the insurance certificate. Of course, the relief department might have provided, either in the contract of insurance or in its by-laws, rules and regulations, that in the event the wife of the insured, whom he had designated as his beneficiary, should be divorced from him, such divorce should terminate her rights as a beneficiary and deprive her of the death benefits. This, however, was not done, for we discover no provision to that effect, either in the application, certificate, by-laws or regulations of the department. Under the circumstances, there is nothing which will require a court to read such a condition or provision into the contract of insurance here involved. In view of the by-laws, rules and regulations, it certainly is not tenable to argue that no one

but relatives of the assured, members of his family, or dependents, can be lawfully designated by him as his beneficiaries, and that such beneficiaries must not only occupy such a relation to the assured when appointed, but must maintain the same status at his death; otherwise they will be deprived of their rights as beneficiaries. It will be noted that rule three of the relief department provides that the fund is payable "to relatives or other beneficiaries specified in the application of such employes." Rule twenty-eight does not require that the beneficiary shall be confined alone to the relatives of the employe, for it provides that an applicant "may, in his application or subsequently, designate a beneficiary to receive his death benefit other than relatives," etc. Rule twenty-nine provides that the death benefits "shall be payable only to the beneficiary or beneficiaries designated in the application to receive the same, if living at the death of the member," etc.

It may be asserted that neither the rules of the relief department nor the provisions of the insurance contract in question limit or confine the appointment of a beneficiary by an applicant to members of his family or his relatives, or to others who are dependent upon him for support. It appears that, under the rules and regulations in question, there are only two essential requirements in regard to a beneficiary: (1) That he or she, as the case may be, be designated by the insured; (2) that he or she remains living as such beneficiary at the death of the insured. If not living, then the death benefit shall be payable to the persons and in the order as provided by rule twenty-nine, *supra.* Appellant's counsel cite and rely upon decisions of the courts of sister states in cases arising out of policies issued by mutual benefit societies wherein the wife of the insured had been made the beneficiary, but subsequently the relations of husband and wife were severed by divorce. In these cases it is true it was held that the divorce of the husband and wife terminated the latter's rights as beneficiary,

and thereafter she was not entitled, upon his death, to receive the benefits. These cases, however, are not applicable to the case at bar, for the reason that the decisions therein depended upon, and in the main were controlled by, the rules and regulations of the society or association issuing the policy of insurance, which rules and regulations were quite different from those involved in this appeal. Among these decisions is *Tyler* v. *Odd Fellows Mut. Relief Assn.* (1887), 145 Mass. 134, 13 N. E. 360, which involved a policy of insurance issued to the husband, in which he had designated his wife as the beneficiary. Some five years after receiving the policy, he and his wife were divorced. The association was organized under an agreement that the organization was for the purpose of defraying the expenses of sickness, burial of its deceased members, and rendering pecuniary aid to the families of the deceased members or other heirs. The by-laws of the association provided that "after payment of the expenses of the funeral and of last sickness, the balance shall be paid to the person or persons designated by the member in his application for membership, or last legal assignment, *provided such person or persons are heirs or members of the decedent's family.*" (Our italics.) It was held in that case that at the death of the insured the relation of the beneficiary to him at that time must be such as was contemplated and provided by the agreement of the association and its by-laws relating to the payment of benefits, and that consequently, as the divorced wife did not sustain such a relation, she was not entitled to receive the death benefit on the death of the insured. The court said: "At the time of the death of L. E. Tyler, his former wife, Etta A. Tyler, was not a member of his family, nor one of his heirs, but her connection with him had been severed by divorce. We, therefore, think she had lost her rights under the designation of her former husband, and was not entitled to anything from the defendant association after his death."

Under the by-laws, of the society the decision of the court in said case is quite inapplicable to the case at bar. Had the by-laws or regulations of the relief department in question contemplated that the beneficiary of a member, in order to be eligible to be appointed as such, must, at the time of the appointment, belong to a certain designated class, or, in other words, that the beneficiary must be confined or limited to relatives of the assured or members of his family, or to dependents, and that such relation of the beneficiary must continue to exist at the maturity of the insurance, then we would have for consideration quite a different proposition from that which is presented. Appellee was, under the rules and regulations of the relief department, eligible for appointment as beneficiary in the first instance, and, as we have held, had not been displaced as such by the insured prior to his death. The fact, that the conjugal relations existing between her and her former husband at the time she was designated as his beneficiary had been thereafter severed by a divorce. prior to the maturity of the policy, did not, under the governing rules, by-laws and regulations of the relief department, render her ineligible as such beneficiary, bar or deprive her of the right to receive the insurance money paid into court by the relief department upon the certificate of insurance. The following cases fully sustain this view of the question: *Brown* v. *Ancient Order, etc.* (1904), 208 Pa. St. 101, 57 Atl. 176; *Courtois* v. *Grand Lodge, etc.* (1902), 135 Cal. 552, 67 Pac. 970, 87 Am. St. 137; *Overhiser* v. *Overhiser* (1899), 14 Colo. App. 1, 59 Pac. 75.

In each of these cases the wife of the assured person had been appointed by him as his beneficiary. Thereafter the parties were legally divorced. In each

8. case the court held that as there was nothing in the contract of insurance, by-laws or regulations of the society or association to the contrary which disqualified the wife as a beneficiary in the event of her divorce from the

assured, she was not therefore rendered ineligible or deprived of receiving the death benefit at its maturity. As a general rule, the authorities affirm that a policy of life insurance or the appointment or designation of a beneficiary, which is valid in its inception, continues and remains valid, although the insurable interest or relationship of the beneficiary has terminated, unless it is otherwise stipulated in the contract. 1 Bacon, Benefit Soc. (3d ed.), §253; *Connecticut Mut..Life Ins. Co.* v. *Schaefer* (1876), 94 U. S. 457.

We conclude that the lower court did not err in sustaining the demurrer to the second and third paragraphs of appellant's complaint.

Judgment affirmed.