Teresa J. RISHEL, Fortis Financial Group, Indiana State Teachers' Retirement Fund, and American United Life Insurance Co., Appellants–Defendants,

v.

ESTATE OF Michael R. RISHEL, by its Administrator, Alan G. GILBERT, Appellee–Plaintiff.

No. 37A04–0202–CV–79.

Court of Appeals of Indiana.

Jan. 16, 2003.

John T. Casey, Blaney, Casey & Walton, Rensselaer, IN, Attorney for Appellant.

Michael Riley, Rensselaer, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Teresa J. Rishel ("Teresa") appeals the trial court's grant of summary judgment to the Estate of Michael R. Rishel, by its administrator, Alan G. Gilbert, ("Estate") and the trial court's denial of Teresa's motion to correct error. Teresa raises two issues, which we consolidate and restate as whether the trial court erred by determining that she waived her right, as her former husband's designated beneficiary, to the proceeds of his Indiana State Teachers' Retirement Fund account and Fortis Financial Group annuities by having

agreed to a property settlement agreement that was made a part of a decree of dissolution. The Estate raises one issue on cross appeal, which we restate as whether the trial court erred by denying its request for attorney fees. We affirm in part, reverse in part, and remand.

The facts most favorable to Teresa, the nonmoving party, follow. Michael R. Rishel ("Michael") and Teresa were married on June 10, 1988. Michael designated Teresa as the beneficiary of his Indiana State Teachers' Retirement Fund account ("retirement account")[1] and his Fortis Financial Group annuities ("Fortis annuities"). The marriage was dissolved on November 23, 1999. The dissolution decree included a property settlement agreement which provided, in pertinent part, that:

6. **RETIREMENT PLANS.** The retirement plans in which [Michael] is a participant shall be set off to him as his sole and separate property, free of any claim of [Teresa]. The retirement plans in which [Teresa] is a participant shall be set off to her as her sole and separate property, free of any claim of [Michael].

\* \* \* \* \*

9. **HUSBAND'S ASSETS.** [Michael] is the owner of assets which are titled in his name alone, as shown by the financial statement attached hereto as Exhibit A. These include bank deposits at Lafayette Bank & Trust Co., an ISTA retirement fund of $71,055.45, Fortis Annuities, and an AUL Group annuity.

These assets have a value of approximately $90,000. All assets identified on Exhibit A hereto which are titled in Husband's name alone are hereby set off to Husband as his sole and separate property, free of any claim of [Teresa].

\* \* \* \* \*

16. **INDEMNIFICATION.** Each party does hereby indemnify, save, and hold the other harmless for all damage, losses, expenses, fees (including reasonable attorney's fees), and other costs and expenses incurred by reason of said party's violation or breach of any of the terms and conditions thereof.

Appellant's Appendix at 23–25 (emphasis in original).

Michael died on January 11, 2000, less than two months after the dissolution decree was entered, without changing his beneficiary designations on either the retirement account or the Fortis annuities. As the designated beneficiary, Teresa claimed the proceeds of the retirement account and Fortis annuities. However, the Estate filed a complaint for breach of contract, specific performance, and declaratory judgment alleging that Teresa had violated the terms of the property settlement agreement by claiming the proceeds of the retirement account and Fortis annuities.[2] Both Teresa and the Estate filed motions for summary judgment. The trial court granted the Estate's motion for summary judgment and ordered that the re-

---

1. The Indiana State Teachers' Retirement Fund is governed by Ind.Code §§ 5–10.2–1–1 to –8–5 (1998 & 2001 Supp.).

2. The Estate also named Fortis Financial Group, the Indiana State Teachers' Retirement Fund, American United Life Insurance Company, and AIG Life Insurance Company as defendants. However, AIG Life Insurance Company was dismissed from the litigation, and Teresa "claims no interest in the American United Life Insurance Company policy." Appellant's Brief at 7. Fortis Financial Group and the Indiana State Teachers' Retirement Fund do not appeal the trial court's judgment.

tirement account and the Fortis annuities be distributed to and owned by the Estate.[3] Specifically, the trial court found that "[p]ursuant to the specific terms of the Rishel Decree of Dissolution and Property Settlement Agreement, [Teresa] gave up her right to any claim" to the retirement account and Fortis annuities. *Id.* at 16–17. The trial court also found that "[b]ased upon the designated evidence, and after considering the contentions, arguments, and authority of the respective parties, the [trial court] FINDS and ORDERS that the [Estate's] claim for attorney fees and expenses should and shall be denied." *Id.* at 18. Teresa then filed a motion to correct error, which the trial court denied.

## I.

■ We first address the issue raised by Teresa. Where a motion to correct error is grounded upon a claim that the trial court erred by granting summary judgment, we review on appeal the grant of summary judgment. Here, we review whether the trial court erred in granting summary judgment by determining that Teresa waived her right, as Michael's designated beneficiary, to the proceeds of his retirement account and Fortis annuities by having agreed to a property settlement agreement that was made a part of their decree of dissolution.

■ On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535,

537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

Teresa argues that, as Michael's designated beneficiary, she is entitled to receive the proceeds from the retirement account and the Fortis annuities. The Estate counters that Teresa waived any claim to the retirement account and the Fortis annuities by entering into the property settlement agreement which was made part

**3.** The Estate also filed a motion to strike affidavits filed by Teresa and points out that "[n]owhere in any of the record has that Motion been ruled upon." Appellee's Brief at 3–4. However, the affidavits are irrelevant to our decision.

of the dissolution decree. The parties agree that in a dissolution proceeding, the trial court "may only divide property with a vested interest at the time of dissolution." *Bertholet v. Bertholet*, 725 N.E.2d 487, 500 (Ind.Ct.App.2000).[4] Teresa argues that her status as beneficiary was not a vested interest, and, thus, was not waived by the property settlement agreement. Rather, according to Teresa, the property settlement agreement gave ownership of the retirement account and the Fortis annuities to Michael, but did not affect her right to receive the proceeds as a beneficiary named by Michael. The Estate counters that, by executing the property settlement agreement, Teresa waived her right to receive the proceeds even as a beneficiary.

Teresa relies, in part, upon our opinion in *Wolf v. Wolf*, 147 Ind.App. 246, 259 N.E.2d 96 (1970). In *Wolf*, this court considered whether, because of a settlement agreement incorporated into the divorce decree, a former wife was prohibited from taking the proceeds of a life insurance policy. *Id.* at 247–248, 259 N.E.2d at 97. There, the property settlement agreement provided, in part, that the wife "release[d] any and all rights, interest and title in any of the residue and remainder of the household furniture and personal property in which she [had] any claim, interest or title." *Id.* at 248, 259 N.E.2d at 97. The husband obtained ownership of the life insurance policy, but failed to remove his former wife as beneficiary. *Id.* at 247–248, 259 N.E.2d at 97. Upon his death, the former wife claimed the proceeds of the life insurance policy.

We held that the former wife did not release her claim as beneficiary of the policy by executing the property settlement agreement because:

> under the law of Indiana, the beneficiary-appellee had a mere expectancy or possibility. It was not until her former husband died, without changing the beneficiary, that her interest in, or right to, the proceeds of the policy became vested. Up until the time of his death the deceased, under the terms of the policy, could have terminated the mere expectancy of appellee.

*Id.* at 249, 259 N.E.2d at 98. Thus, "the policy was the sole property of the deceased and during his lifetime he could name as beneficiary anyone he wished. The mere expectancy that arose because [the former wife] was named as beneficiary was not a property right prior to the demise of the named insured." *Id.* at 250, 259 N.E.2d at 98. We concluded that the former wife "had a mere expectancy and not a property right, interest, or title capable of being construed within the term 'personal property' as used in the settlement agreement." *Id.* at 251, 259 N.E.2d at 99. Thus, the former wife was entitled to the proceeds of the life insurance policy as the beneficiary. *Id.; see also Metropolitan Life Ins. Co. v. Tallent*, 445 N.E.2d 990, 992 (Ind.1983) (holding that "[w]here by the terms of the policy the right is

---

**4.** Ind.Code § 31–15–7–4 (1998) requires a trial court to "divide the property of the parties" in a dissolution proceeding. Ind.Code § 31–9–2–98 (1998) defines "property" as "all the assets of either party or both parties," including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

reserved by the insured to change the beneficiary at will, then the original beneficiary acquires only a defeasible vested interest in the policy, a mere expectancy, until after the death of the insured").

Teresa also relies upon our holding in *Graves v. Summit Bank*, 541 N.E.2d 974 (Ind.Ct.App.1989), *trans. denied*. In *Graves*, the husband opened an Individual Retirement Account ("IRA") and named his wife as the beneficiary in the event of his death. *Id.* at 975. The parties divorced, and the husband failed to change the beneficiary designation for the IRA. *Id.* Several years later, the husband died and the former wife claimed the proceeds of the IRA. *Id.* The trial court granted summary judgment to the estate. *Id.*

We reversed, noting that, "in the context of life insurance contracts, … a divorce decree alone does not result in a change of the beneficiary named in the insurance policy." *Id.* at 977. The estate argued that this rule applied only to term insurance and not to policies which have a cash value. *Id.* Thus, the estate contended that "a different rule should apply to life insurance policies that have 'cash value,' pensions which vest and accounts such as the one here." *Id.* However, we disagreed with that argument and held:

> We do not see any reason to create a distinction in the rule. While "whole life," "universal life," etc., type life insurance policies are personal property which may be assigned, transferred or sold, so are term insurance policies. The fact that term insurance policies have no "cash value" which is payable from the insurer to the owner of the policy does not render such a policy non-property. Therefore, we apply the same rule to IRA's that is presently applied to term life insurance policies.

*Id.*

The estate in *Graves* also argued that the former wife agreed to "relinquish all claims to any property awarded" to the former husband in the parties' property settlement agreement. *Id.* at 978. In rejecting that argument, we relied upon *Wolf* and held that:

> Again, we see no reason why this rule should not be applied to an IRA, as it has been applied to life insurance policies. At the time of the entry of the Property Settlement Agreement, [the wife] possessed no property right in the IRA. She merely had an expectancy. [The husband] was free to change the beneficiary at any time. He did not do so.

*Id.* at 979. Thus, we held that the former wife was entitled to the proceeds of the IRA, and the trial court erred as a matter of law by granting summary judgment to the estate. *Id.*

The Estate in this case encourages us to follow *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301 (Ind.Ct.App. 1998). In *Von Haden*, the husband had an employment-related savings plan account of which his wife was the designated beneficiary. *Id.* at 303. In their dissolution proceeding, the property settlement agreement distributed the savings plan account benefits, "providing that each party would receive as his or her sole and separate property one-half of the non-taxable amount and one-half of the remaining taxable amount, and that each party would be responsible for one-half of the tax liability." *Id.* However, the husband did not change his beneficiary designation, leaving the wife as the beneficiary of his portion of the savings plan account. *Id.* The husband died a few months after the dissolution decree was entered. *Id.* As beneficiary, the wife received the funds, and the husband's estate filed an action to recover them. *Id.* The trial court granted summary judgment to the estate. *Id.*

Another panel of this court affirmed, holding that the trial court did not err by granting summary judgment to the estate. *Id.* at 306. Importantly, the panel noted that the plan was governed by ERISA[5] which supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Id.* at 303–304 (quoting 29 U.S.C. § 1144(a)). The provisions of ERISA did not preclude a designated beneficiary from waiving a right to the payment of benefits. *Id.* (citing *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 279 (7th Cir.1990), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990)). Thus, the panel looked to the parties' property settlement agreement, which provided in part:

> In consideration of all of the promises contained in this agreement, Petitioner and Respondent hereby release all claims and right which either ever had, now has, or might hereafter have, against the other by reason of their former relationship as husband and wife, or otherwise, excepting all of the claims and rights of each party created and outstanding against the other pursuant to the terms of this agreement. It is the intent hereof that each party accepts the provisions of this agreement in full release and settlement of any and all claims and rights against the other. It is the further agreement of the parties that the provisions of this agreement shall inure to the benefit of, and be binding upon, the heirs, executors, administrators, and personal representatives of the parties.

*Von Haden*, 699 N.E.2d at 304–305.

Although the wife in *Von Haden* relied upon our holding in *Graves*, the *Von Haden* panel distinguished *Graves* for three reasons. *Id.* at 305. First, the *Graves* decision did not consider the preemption of state law by ERISA. *Id.* Second, *Graves* did not involve a situation where a life insurance policy beneficiary has entered into a separate agreement to accept only part of the policy proceeds. *Id.* Third, the panel did not believe that *Graves* supported the wife's argument "that the divorce [decree] did not give her a property right in the IRA, only a revocable interest." *Id.* The panel held that the wife's "argument overlook[ed] the fact that when the marital pot was divided, the parties and the court considered the cash value of the IRA at the time of separation, not the value of a revocable expectancy." *Id.* Thus, the panel held that, in light of the language of the property settlement agreement, it could not "say the trial court erred as a matter of law when it found that such language was broad enough to encompass a waiver by [wife] of her right to [husband's] share of his pension." *Id.* Consequently, the panel held that the trial court did not err as a matter of law when it held that the wife had "waived any right she might have had to [the husband's] share of his pension benefit upon his death." *Id.*

■ Here, the parties' property settlement agreement awarded the retirement account and the Fortis annuities to Mi-

5. ERISA is the acronym for the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C. § 1001 *et seq.* Our supreme court noted that the "stated purpose of ERISA is to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts.' " *Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 166 (Ind.2000) (citing 29 U.S.C. § 1001(b)).

chael "as his sole and separate property, free of any claim of [Teresa]." Appellant's Appendix at 23–24. Michael died shortly after the dissolution decree was entered without removing Teresa as the designated beneficiary for both the retirement account and the Fortis annuities.

We hold that this case is more analogous to *Graves* and *Wolf* than *Von Haden*. As in *Graves*, we see no reason to create a distinction between life insurance and the retirement account and Fortis annuities at issue here. Thus, the parties' divorce decree alone does not result in a change of the beneficiary named in the retirement account or the Fortis annuities. Moreover, Teresa did not waive her right to be Michael's beneficiary by entering into the property settlement agreement which awarded ownership of the retirement account and Fortis annuities to Michael. Michael received the property "free of any claim" of Teresa. As beneficiary, Teresa did not have a property right to the funds. Rather, she had a "mere expectancy or possibility." *See Wolf,* 147 Ind.App. at 249, 259 N.E.2d at 98. Michael still had the right to change the beneficiary and did not do so.[6] As in *Graves*, we cannot say that the "free of any claim" language of the property settlement agreement was sufficient for Teresa to waive her right to the proceeds of the funds as Michael's designated beneficiary.

The three reasons that the *Von Haden* panel used to distinguish *Graves* do not apply here. The parties do not claim that the retirement account or the Fortis annu-

ities are in any way governed by ERISA. Teresa did not enter into a specific agreement to accept only part of the proceeds of the retirement account or the Fortis annuities.[7] Moreover, as previously noted, we cannot say that the language of the property settlement agreement is broad enough to encompass a waiver of Teresa's expectancy interest. Thus, the Estate's reliance upon *Von Haden* is misplaced.

The Estate also relies upon, and trial court gave some weight to, a decision of the Utah Supreme Court, *Estate of Anello v. McQueen,* 953 P.2d 1143 (Utah 1998). There, the wife claimed the proceeds of her former husband's IRA as beneficiary, and the Estate argued that she had waived her right to the proceeds by entering into the parties' property settlement agreement. *Id.* at 1145. The Utah Supreme Court noted that:

> The general rule in Utah is that divorce alone does not terminate a former spouse's rights as a survivor beneficiary of an insurance policy, IRA, or retirement benefits, or as a devisee or legatee under a will.... Thus, one who has an expectancy interest in an asset owned by a former spouse retains that interest unless a property settlement or divorce decree evidences a clear intent to deprive that person of the expectancy interest in addition to disposing of existing property rights. For a waiver or renunciation of an expectancy interest to be found, it is not enough that there be general language from which a renunciation or waiver might be adduced. It

---

6. Although the parties have not provided us or the trial court with documentation regarding the terms of the retirement account or the Fortis annuities, neither party suggests that there was any limitation on Michael's ability to designate a beneficiary or that any term relating to that ability has any significance to the issues here. The terms under which a beneficiary is designated could, of course,

have significant implications in these situations.

7. Moreover, even if Teresa had been awarded only a portion of the retirement account or Fortis annuities in the property settlement agreement, we would fail to see any distinction between this case and *Graves*.

must appear from the terms of the property settlement or divorce decree that (1) the document focuses on the survivorship interests or expectancies, and (2) the disclaimer of any future rights that might arise from such expectancies is clear.

*Id.*

The Utah Supreme Court held that the wife had clearly waived any claim as beneficiary of the IRA. *Id.* at 1146. The decision was based upon the language in the property settlement agreement. *Id.* Although the husband had explicitly agreed to continue the wife as beneficiary to his civil service retirement and his Martin Marietta retirement, no such language was included in the property settlement agreement with respect to the IRA. *Id.* at 1144–1145. Rather, as the court noted:

The property settlement agreement and the divorce decree do not explicitly state that [the wife] renounces or relinquishes rights as a survivor beneficiary of the IRA in so many words, but the divorce decree uses language of renunciation that is comprehensive and, in the context of the decree and agreement, clear:

Plaintiff and Defendant are awarded their own separate IRA, as their individual and separate property, free and clear of any claim or interest of the other party.

That language clearly includes both existing property interests and future expectancies. Given the context of the documents and the specific focus of the parties on other expectancies arising from the assets with which they were dealing, we conclude that the parties used the terms "free and clear of any claim or interest of the other party" to mean all claims or interests including those interests they had just addressed in connection with their civil service retirement benefits and the Martin Mar-

ietta retirement and insurance benefits. Taking the documents as a whole and the language dealing with the IRAs in context, we see no room to doubt the parties' intent to accomplish a renunciation.

*Id.* at 1146. Thus, the provisions referred to by the Utah Supreme Court dealt in detail with the parties' present income rights and future beneficiary rights to various retirement plans. The Utah Supreme Court was construing the "free and clear of any claim or interest" language in conjunction with other provisions of the property settlement agreement not found in this case. Here, none of the other provisions of the property settlement agreement make it clear that Teresa and Michael were addressing a waiver of Teresa's future expectancy rights. Thus, *Anello* is distinguishable.

Because we hold that Teresa did not waive her right to the proceeds as a result of having agreed to the property settlement agreement which was made a part of the dissolution decree, Teresa, as designated beneficiary, is entitled to receive the proceeds according to the terms of the retirement account and the Fortis annuities. We hold that Teresa is entitled to summary judgment as a matter of law. The trial court erred by granting the Estate's motion for summary judgment on this issue. *See, e.g., Graves,* 541 N.E.2d at 979.

## II.

■ The Estate cross-appeals from the trial court's denial of its request for attorney fees. The Estate relies upon the property settlement agreement which provides, in pertinent part, that: "Each party does hereby indemnify, save, and hold the other harmless for all damage, losses, expenses, fees (including reasonable attorney's fees), and other costs and expenses

incurred by reason of said party's violation or breach of any of the terms and conditions thereof." Appellant's Appendix at 25. The Estate claims that Teresa violated the property settlement agreement by filing claims to the retirement fund and the Fortis annuities. Having held that Teresa did not waive her right to the proceeds of the retirement fund and the Fortis annuities by entering into the property settlement agreement, we hold that Teresa did not violate or breach the property settlement agreement by claiming the funds as designated beneficiary. Thus, the trial court did not err by denying the Estate's request for attorney fees under the property settlement agreement. *See, e.g., Tipton County ex rel. Tipton County Council v. State ex rel. Nash,* 731 N.E.2d 12, 19 (Ind.Ct.App.2000) (holding that because plaintiff's underlying claim was without merit, his claims for liquidated damages and attorney fees must also fail), *trans. denied.*

For the foregoing reasons, we affirm the trial court's denial of the Estate's request for attorney fees. However, we reverse the trial court's grant of summary judgment to the Estate and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., concurs.

FRIEDLANDER, J., concurs with separate concurring opinion.

FRIEDLANDER, Judge, concurring.

I agree that Teresa Rishel should receive the disputed funds, but upon a different rationale than that articulated by the majority.

At first blush, I was troubled by the fact that an ex-spouse could file a claim for the proceeds of an investment account in which she voluntarily relinquished any interest as part of a negotiated dissolution settlement agreement. I would have serious misgivings awarding those proceeds to the ex-spouse if the gist of the facts was that the ex-spouse's interest arose by virtue of beneficiary status, and said status was the product of the deceased ex-spouse's perhaps excusable neglect in changing that designation. My review of the record reveals, however, that there is evidence that Michael Rishel's failure to remove Teresa Rishel as beneficiary was intentional, not inadvertent. For example, I note that Robert C. Kaye, claiming to be a friend of both of the Rishels, submitted an affidavit stating, "Mike specifically spoke about Teresa being the beneficiary for his retirement and commenting that he had not changed beneficiaries because he believed that he and Teresa would probably be back together." *Appendix to Appellant's Brief* at 39. Based in large part upon this and other evidence that, notwithstanding the contrary terms of the dissolution decree, Michael chose to leave Teresa as the beneficiary on his retirement and annuity accounts, I agree that she should receive those funds as the designated beneficiary.